**Edward Lee HARPER, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 97–SC–110–MR.

Supreme Court of Kentucky.

Sept. 3, 1998.

Rehearing Denied Nov. 19, 1998.

Julie Namkin, Shelly R. Fears, Assistant Public Advocates, Office of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler, III, Attorney General, Connie Vance Malone, Susan Roncarti, David A. Smith, Janet M. Graham, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

GRAVES, Justice.

Appellant, Edward Lee Harper, Jr., was convicted and sentenced to death in the Jefferson Circuit Court for the murder of his adoptive parents, Edward and Alice Harper. This Court affirmed his convictions and sentence on May 2, 1985. *Harper v. Commonwealth,* Ky., 694 S.W.2d 665 (1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). On August 28, 1986, Appellant filed an RCr 11.42 motion and request for an evidentiary hearing in the Jefferson Circuit Court. Appellant filed a supplemental motion on July, 1, 1996. In December 1996, the trial court denied Appellant's motion without conducting a hearing and he appeals as a matter of right. Appellant argues that the trial court erred in denying an evidentiary hearing to determine issues of ineffective assistance of counsel:(1) at trial; (2) on appeal; and (3) on post-conviction review.

## I.

Appellant contends that he was entitled to an evidentiary hearing because his claims of ineffective assistance of trial counsel could not be determined from the face of the trial record. Appellant argues his retained trial counsel was deficient in that he failed to: (1) obtain independent defense mental health experts; (2) request funds for such experts; (3) make adequate use of court-appointed mental health experts; (4) identify, research and present legal grounds for the suppression of Appellant's confession; and (5) anticipate and

prepare for the penalty phase of Appellant's trial. Appellant argues that evidence outside the record is necessary to establish the validity of his claims, and thus an evidentiary hearing is required.

RCr 11.42 requires a hearing "if the answer raises a material issue of fact that cannot be determined on the face of the record." RCr 11.42(5); *Stanford v. Commonwealth*, Ky., 854 S.W.2d 742, 743 (1993), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 703, 126 L.Ed.2d 669 (1994). If the record refutes the claims of error, there is no need for an evidentiary hearing. *Id.* A hearing is also unnecessary where the allegations, even if true, would not be sufficient to invalidate the conviction. *Brewster v. Commonwealth*, Ky. App., 723 S.W.2d 863 (1986). "Even in a capital case, an RCr 11.42 movant is not automatically entitled to an evidentiary hearing." *Stanford, supra* at 743. (citing *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573, 576 (1990), *cert. denied*, 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991)). Having laid that foundation, we will address each of Appellant's claims regarding the effectiveness of his trial counsel.

### A. Whether trial counsel should have retained independent defense mental health experts.

Appellant asserts that a hearing is essential to ascertain the reason why counsel, although relying on the defense of insanity, did not obtain his own independent mental health expert in addition to the court-appointed experts. Prior to trial, the trial court ordered an evaluation of Appellant at Kentucky Correctional Psychiatric Center (KCPC). The evaluation was subsequently performed by Dr. Pran Ravani, a psychiatrist, and Dennis Wagner, a psychologist. Appellant's counsel informed the trial court on several occasions that he was considering having Appellant examined by an independent expert, but was waiting to review the results of the KCPC evaluation. Ultimately, counsel chose not to retain an independent expert.

At trial, both Dr. Ravani and Wagner testified for the defense. Both stated that Appellant suffered from schizophrenic form disorder, an acute form of schizophrenia which can be shorter in duration. However, neither testified that in their opinion, Appellant, at the time of the murders, probably lacked substantial capacity to appreciate the criminal nature of the act or that he did not have the substantial capacity to conform his conduct to the requirements of law. Wagner did testify that *if* Appellant was suffering from the disorder at the time of the killings, he would not have been able to tell right from wrong or to control his actions.

Appellant believes that an independent expert was essential to assist counsel in determining whether insanity was an appropriate defense, to aid counsel in presenting that defense, and to aid counsel in the presentation of mitigating evidence. Appellant relies on this Court's opinion in *Binion v. Commonwealth*, Ky., 891 S.W.2d 383 (1995), which held that the trial court's appointment of a neutral mental health expert was "insufficient to satisfy the constitutional requirement of due process because the services of a mental health expert should be provided so as to permit that expert to conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense." *Id.* at 386. This Court recognized that pursuant to *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), indigent defendants are entitled to be provided with a psychiatrist to assist in building an effective defense. *Binion, supra* at 386; *see also Hunter v. Commonwealth*, Ky., 869 S.W.2d 719 (1994).

Here, however, we are presented with a different situation. Appellant was not indigent and was represented by retained counsel of his choice. The question is not whether the trial court had the responsibility to provide an expert, but whether counsel was ineffective in failing to retain an independent expert to assist in the defense.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established the standard by which to evaluate counsel's performance. In order to overcome the strong presumption that counsel's conduct fell within the wide range of reasonably pro-

fessional assistance, Appellant must show that his counsel's performance was deficient and that he was prejudiced by that deficiency. *Id.* at 687, 104 S.Ct. at 2064.

> When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Id.* at 695, 104 S.Ct. at 2069; *see also Hopewell v. Commonwealth,* Ky., 687 S.W.2d 153 (1985).

In *Henderson v. Commonwealth,* Ky., 636 S.W.2d 648, 650 (1982), this Court stated that "defense counsel should be required to perform at least as well as a lawyer with ordinary training and skill in criminal law, utilizing that degree of training to conscientiously protect his client's interest."

■ A reviewing court, in determining whether counsel was ineffective, must be highly deferential in scrutinizing counsel's performance. The tendency and temptation to second guess is strong and should be avoided. Thus, we must look to the particular facts of the case and determine whether the acts or omissions were "outside the wide range of professionally competent assistance" to the extent that the errors caused the "adversarial testing process" not to work. *Strickland, supra* at 690, 104 S.Ct. at 2066.

We are of the opinion that trial counsel's decision not to present additional mental health experts is certainly consistent with trial strategy based on investigation. The record reflects that it was clearly counsel's strategy to await the results of the KCPC examination before determining whether to have Appellant independently examined. The court-appointed experts essentially conceded that Appellant suffered from some form of a mental disorder, and Wagner went so far as to testify that if the disorder was present at the time of the murders, Appellant would not have been able to control his actions. Thus, counsel could have reasonably concluded that testimony from an independent expert was unnecessary.

Further, an argument may be made that a jury would view a court-appointed expert more credibly than an expert hired to assist and testify for the defense. Nonetheless, Appellant has not demonstrated that the experts by whom he was examined were not qualified, or that counsel had reason to believe they were not qualified to determine whether Appellant's mental capacity was diminished at the time of the offenses. Competent representation does not demand that counsel seek repetitive examinations of Appellant until an expert is found who will offer a supportive opinion.

**B. Whether counsel was ineffective for failing to request funds for an independent mental health expert.**

■ Appellant further takes issue with counsel's failure to request funds for independent mental health experts. Appellant sets forth several alternatives trial counsel had available to him to obtain funds, from declaring Appellant indigent (although he had retained counsel) to requesting funds pursuant to KRS 31.110(1)(b) and (3), KRS 31.185, and KRS 31.200. Appellant goes so far as to speculate that if counsel's failure to obtain expert assistance was due to lack of funds because Appellant had not paid him, then a conflict of interest existed between Appellant and trial counsel, thus denying Appellant effective assistance of counsel.

We find Appellant's claims to be conjecture without any evidentiary support. There is absolutely nothing in the record to indicate that counsel rendered ineffective assistance by failing to request funds. No evidentiary hearing is required if the allegations of the RCr 11.42 motion are insufficient. *Maye v. Commonwealth,* Ky., 386 S.W.2d 731 (1965).

**C. Whether counsel competently used the court-appointed mental health experts to present defense evidence.**

■ In the first part of this argument, Appellant alleges that counsel rendered ineffective assistance during the competency hearing by failing to question Dr. Ravani as to whether Appellant met the statutory definition of competence to stand trial as set

forth in KRS 504.040(1). Further, Appellant alleges that counsel should have called him to testify during the competency hearing. Appellant's argument may be interpreted that, because at a later point during the trial his counsel complained he was not assisting in his defense and providing accurate information, had Appellant testified at the competency hearing he would have been found incompetent to stand trial.

◼ We note that the trial court elicited from Dr. Ravani during the competency hearing that Appellant met the statutory definition of competent. Further, this Court on direct appeal affirmed the trial court's finding of competency. *Harper, supra* at 670. Given that Appellant testified during the suppression hearing and trial, we fail to perceive any benefit from calling him as a witness during the competency hearing. The fact that Appellant was difficult and failed to tell the entire truth to his counsel does not equate to a finding of incompetency. On the contrary, such conduct is subject to an inference of gamesmanship.

Next, Appellant alleges that counsel "failed to use the neutral KCPC experts to explain to the jury how what was inside Harper's mind . . . resulted in Harper's homicidal behavior." A review of the record, however, reveals that counsel not only used the KCPC experts to convey such information, but also used several other witnesses. The KCPC experts specifically related Appellant's conduct in committing the murders to his mental disorder and the problems he was experiencing. Further, several family members and friends described Appellant's mental state and resulting behavior at that time.

Finally, Appellant argues that counsel failed to use the KCPC experts during the penalty phase to adequately convey mitigating factors and explain Appellant's motivation. However, counsel presented the testimony of Wagner, who reiterated that schizophrenic form disorder is of a brief duration and is characterized by emotional turmoil and confusion. Further, it is clear that counsel presented an abundance of information explaining to the jury how all of the factors culminated in the acts of killing. Again, it is clear that these allegations were

sufficiently resolved by a review of the record.

### D. Whether counsel rendered ineffective assistance during the suppression hearing.

◼ Appellant argues that counsel failed to present proper legal grounds for the suppression of his confession. During the suppression hearing, Appellant testified that he gave a full confession to police on April 3, 1982. In response to questioning, Appellant stated he could not remember whether his rights had been read to him prior to giving the statement. He did testify, however, that when he asked for his lawyer before signing the waiver of rights form, police told him that a lawyer would only take his money and urged him to sign the consent form. Appellant proceeded to give a full confession, and recounted the story not only to several individuals at the police station, but also in phone conversations throughout the day. The Commonwealth, in turn, presented several witnesses who testified that Appellant was given Miranda rights at least two times prior to questioning.

Counsel did file a pretrial motion to suppress all statements made by Appellant on the grounds they "were made under duress without a knowing and voluntary waiver of Appellant's right to counsel, and to remain silent." Further, it is clear that counsel elicited Appellant's testimony during the suppression hearing in order to show that Appellant had asked for a lawyer before giving his statement, and thus had invoked his Fifth Amendment privilege. However, the trial court conducted the suppression hearing in accordance with RCr 9.78 and found that there was substantial evidence to admit the confession.

We are unpersuaded by Appellant's claim that his confession should have been suppressed because it violated his Fifth and Sixth Amendment rights, and was not voluntary because of his "mental illness." The admissibility of the confession was addressed by this Court on direct appeal, wherein we held that although a portion of the transcript of the suppression hearing was missing from

the record, there was evidence that the confession was voluntarily given. "[W]e are of the opinion that all of the circumstances bolster the ruling of the trial court. Harper clearly was given his Miranda rights at least twice before making the statement." *Harper, supra* at 669. Appellant's claim can be resolved from the record and does not merit an evidentiary hearing.

### E. Whether counsel failed to anticipate and prepare for the penalty phase of trial.

■ Appellant complains that counsel failed to investigate and develop critical statutory and nonstatutory mitigation evidence during the penalty phase. Appellant goes to great lengths to set forth the various publications which were available at the time of trial to help counsel prepare for the penalty phase in a capital case. Had counsel adequately investigated, Appellant concludes, then he would have presented mitigating evidence such as Appellant's lack of criminal record, the "dysfunction present in his biological family" (although he was adopted at birth), his loving relationship with his son, and his "considerable talent in sports." Further, had counsel seriously prepared for the penalty phase, he would have moved for a continuance to allow the jury to "cool off", as well as renewed all pretrial motions.

■ With regard to the "myriad of resources" available to counsel at that time, we find it completely irrelevant to the determination of counsel's effectiveness. Appellant does not even state how these publications would have aided counsel. Further, it is apparent that counsel did present many positive aspects of Appellant's life during the guilt phase of trial. When the same jury sits in both parts of a bifurcated proceeding in a capital murder trial, all evidence introduced in the guilt phase may be considered by the jury during the sentencing phase. *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1988), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 774 (1990). Finally, we find absolutely no credence in Appellant's "theory" that counsel should have moved for a continuance and renewed pretrial motions.

This is simply not grounds for an ineffective assistance of counsel claim.

Having reviewed each allegation of ineffective trial counsel, we conclude that Appellant has failed to demonstrate any claims which are not refuted by an analysis and review of the trial record. As noted by the trial court, many of Appellant's claims are nothing more than bold assertions without any factual basis. Such does not justify an evidentiary hearing pursuant to RCr 11.42.

■ On review, as a court far removed from the passion and grit of the courtroom, we must be especially careful not to second-guess or condemn in hindsight the decision of defense counsel. A defense attorney must enjoy great discretion in trying a case, especially with regard to trial strategy and tactics. Under *Strickland, supra*, it is not enough that counsel erred and Appellant's trial reached an unfavorable result. Instead, Appellant must demonstrate that, absent counsel's errors, there exists a "reasonable probability" the jury would have reached a different verdict. *Id.* Inasmuch as we might not necessarily agree with trial counsel's trial strategy and may likely have employed other tactics, we do not believe that in light of all of the circumstances his performance was "outside of the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066.

### II.

■ Appellant argues that his counsel on direct appeal was also ineffective in failing to develop a narrative statement of the suppression hearing. Appellant points out that in this Court's opinion affirming his conviction, we did not fully address the suppression issue because a portion of the hearing tape was lost. The opinion stated that it was incumbent upon Appellant to supply a transcript of the hearing on appeal in order for the Court to be able to undertake a complete review of the suppression issue. *Harper, supra* at 668. Appellate counsel did subsequently prepare a narrative statement which was submitted to this Court in support of Appellant's petition for rehearing.

Appellant claims that *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), guarantees the effective assistance of counsel on the first appeal as a matter of right, and urges this Court to reconsider its decision in *Hicks v. Commonwealth,* Ky., 825 S.W.2d 280 (1992), in which we stated, "[w]e will not examine anew an appeal reviewed, considered and decided by this Court." *Id.* at 281. However, *Evitts, supra,* is factually distinguishable in that Evitts' counsel made a mistake which caused the appeal to be dismissed, essentially depriving Evitts of any appeal. The opinion in *Hicks, supra,* addressed this distinction.

We think there is a substantial difference in the situation of a convicted defendant for whom no appeal was even taken or one whose appeal was dismissed solely due to neglect of counsel and the situation of a defendant whose appeal was completely processed and the judgment affirmed. In the first case, there was never any consideration of the merits of any substantive issue by the appellate court. In the latter case, the appellate court has considered and decided the merits of the appeal. We will not examine anew an appeal reviewed, considered and decided by this Court.

*Id.* at 281.

■ RCr 11.42 cannot be used as a vehicle for relief from ineffective assistance of appellate counsel. *Vunetich v. Commonwealth,* Ky., 847 S.W.2d 51 (1992); *Commonwealth v. Wine,* Ky., 694 S.W.2d 689 (1985). Notwithstanding the procedural deficiency, Appellant has failed to demonstrate any prejudice. We are of the opinion that Appellant was represented well on direct appeal. . Thirty-nine allegations of error were raised and considered by this Court. Moreover, the narrative statement was considered in ruling on the petition for rehearing. Appellant has failed to satisfy the requirements for an evidentiary hearing.

### III.

Appellant further claims post-conviction counsel was ineffective. Appellant concedes that this issue is not preserved, however he urges that it is reviewable as palpable error

under RCr 10.26. It is Appellant's position that, assuming arguendo the trial court was correct in stating that "[n]o issues of fact were raised by [Appellant's] motion", then Appellant was denied the right to effective assistance by appointed post-conviction counsel.

■ The Commonwealth aptly points out that the purpose of an RCr 11.42 proceeding is to review a judgment and sentence for constitutional validity of the proceedings prior to judgment or in the sentence and judgment itself. *Hicks, supra* at 281. The rule simply provides for a collateral attack on the sentence. RCr 11.42(1). Assuming that this issue could be considered under RCr 11.42, Appellant concedes that it was not presented to the trial court for consideration. In the absence of palpable error affecting Appellant's rights, this issue is not reviewable on appeal. *Todd v.. Commonwealth,* Ky., 716 S.W.2d 242 (1986).

■ Notwithstanding the procedural deficiency, Appellant's argument is without merit. In *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991), the United States Supreme Court held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." (citations omitted); *See also Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). Thus, Appellant's argument fails on the merits and clearly demonstrates that an evidentiary hearing was not necessary as the issue involved strictly a question of law. *See Stanford, supra* and *Skaggs, supra.*

Accordingly, for the reasons set forth herein, we conclude that the trial court properly denied Appellant an evidentiary hearing. All claims set forth both in the original and supplemental RCr 11.42 motions are either refuted by the record, *Stanford, supra,* or insufficient to justify a hearing. *Maye, supra.*

The decision of the Jefferson Circuit Court is affirmed.

STEPHENS, C.J., and GRAVES, JOHNSTONE and WINTERSHEIMER, JJ. concur.

STUMBO, J., dissents by separate opinion in which COOPER and LAMBERT, JJ., join.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. The issues raised by Appellant in his RCr 11.42 motion for relief are extremely serious and, in my opinion, should not be disposed of without first having the benefit of an evidentiary hearing in the trial court. Among other holdings, the majority herein reaches the conclusion that trial counsel's decision not to seek additional evidence by way of mental health experts is "certainly consistent with trial strategy based on investigation." I find it difficult to understand how the Court can so hold without first hearing from trial counsel that trial strategy dictated that decision, as opposed to financial restraints or simple assumption that the experts who did testify would do so more affirmatively than they actually did. To conclude either of the latter would be just as speculative as to conclude counsel reasonably could have assumed further expert testimony was unnecessary. Indeed, we also easily could assume that trial counsel simply did not fully investigate what the testimony would be, or that counsel was unschooled in the method of presenting the evidence needed to fully develop his client's defense.

While it is true our function is not to second-guess the actions of trial counsel, we are not required to assume that trial counsel has within his or her grasp every detail about his or her client and is fully versed in all aspects of trial strategy. Each case is different and presents its own complexities, which may or may not fit within the parameters of counsel's previous experience. In a case in which the potential penalty is death and the client is uncooperative, preparation for trial is far more difficult than in typical cases, and the demands on even usually competent counsel are increased. There are times when a lawyer is simply over his or her head. In saying this, I do not mean to disparage trial counsel in this case, but rather I merely point out that without an evidentiary hearing

and the requisite findings by the court conducting same, we cannot, and should not, pass judgment on whether this particular lawyer's actions in this particular case were within the requisite range of professional skills needed to conscientiously protect the client's interests. *Henderson v. Commonwealth*, Ky., 636 S.W.2d 648 (1982). I would, therefore, remand this case to the trial court for an evidentiary hearing on the allegations presented by the RCr 11.42 motion.

LAMBERT, J., joins.

COOPER, J., joins this dissent to the extent that he would reverse and remand for an evidentiary hearing.